Good morning, judges. May I please the court? My name is Barbara Darnell Allen, and I represent the petitioner in this matter. Before this court is a timely filed motion to reopen that was denied by the Board of Immigration Appeals. In that motion to reopen, we offered new evidence where we presented an affidavit from the petitioner and a death certificate of the petitioner's cousin who was similarly situated as the merchant who was murdered in El Salvador. The board denied the motion stating that the evidence of the murder would not likely change the result of the immigration judge's case for asylum withholding of removal and convention against torture. In the IG's decision, the petitioner did not sufficiently prove her social group and whether she experienced past and future persecution by the government or a group that the government was unable or unwilling to control. What's your client's strongest argument? My client's strongest argument is that suffering death threats alone without physical harm is persecution. Counsel, can I just interrupt because I agree with you on that, that absolutely death threats in my mind would be persecution, but don't you have to establish that it was irrational for the BIA not to reopen based on the cousin's death two years later? So what's irrational about them not reopening? Can I just address the premise? How much later was the cousin's death? It was the cousin died... I just realized my mistake. I read something into your question. The cousin's death was just a matter of days after the ruling. Yes. And you meant after the other death. My question was just why was it irrational for them to fail to reopen based on that incident two years afterwards? Well, Judge, what we're saying is that the cousin's death, the cousin was a merchant as well, similar situation to the petitioner in this case, who didn't pay gang fees. What we know for sure is that the harm that the petitioner suffered was excruciating to the point where she had gone to the police to report. I guess I'm going to interrupt again because we do know the facts, and I'm agreeing with you for the sake of argument that this was persecution, but what's the irrationality? Why would the BIA have been irrational to say that's attenuated and it just goes to extortion anyway? It doesn't somehow put her in a protected social group. Where was the irrationality? Well, my position is that the petitioner would now be in a social group of merchants or business owners refusing to pay gang fees. Also, the BIA. She was deemed credible, right? Yes, she was deemed credible. And she does seem to be unusually situated in that we see an awful lot of cases where there's horrible violence, and we don't contest the severity of the violence as here, but it seems to be random criminal violence. And so she does seem to be unusually situated in that she had this death threat from the gang, and she had someone murdered on her front doorstep. She moved her business, I think, twice, cut off her phone, killed someone on her doorstep. Her children were present at the time. And then a follow-up threat immediately afterwards, so I think three days and then four days, you know, to be continued extortion demands, and you know what will happen if you don't comply. So we understand those facts, as Joe Tudenson just explained. So it does seem to be somewhat different than other criminal activity. She says that she reported to the police, and the other thing that struck me as unusual is that she also says that she was deemed credible, so we take it as true that she told the gang directly more than once that she would not give money to the gang. She would not sort of support their cause. So she claimed political persecution as a result, right? It seems to me that if this was a, the underlying claim was actually a very close call, but it does come back to the question about where motion to reopen, that's what we're looking at. And what I'm concerned with is that the motion to reopen bakes in the underlying opinion, of course, and the underlying opinion struck me as quite vulnerable. It misstates Ninth Circle Law in a couple of different places. Nevertheless, it wasn't appealed, was it? Was it appealed because? I'm talking about the underlying. The underlying was not appealed? No. Okay. So then we're left with the motion to reopen, and we have, and I admit it bakes in the underlying decision, but the only new evidence is the cousin's death, right? Yes, Judge. Which we are stating enhances the petitioner's claim regarding her well-founded fear of future persecution. It lends to her credence also that relocation is not even viable. The gang know and would have known that she was a witness to a murder on her property, that the murder was investigated, that she was the witness with her children. And she testified that they did not, the police responded, but they didn't offer her protection, and she testified they said it could take a year, and all of that is, you know, in my scorecard, it is a very compelling story. But I'm looking to see about a couple of things. Did the petitioner argue anywhere to the board that the IJ misapplied Ninth Circuit law in the original decision, misapplied specifically the withholding standard, for example? I don't recall, but I know we did a focus argument regarding the denial. I don't have the brief itself with me. It sounds like Judge Higginson and I read the record the same way that we have. We're looking at just the motion to reopen. I don't want to speak for Judge Bumate, but we're looking at the motion to reopen, and the new evidence was the death certificate. Is that right? Yes, that's correct. And the petitioner's statement. Okay. So we have to, the question is how does this new evidence compel a contrary conclusion? What's your best shot? Well, basically I'm saying that merchants in the same position as Mike Klein, they're not protected no matter what could have happened, even if the petitioner had suffered. Did you raise that particular social group of merchants the first time? We used business owners versus merchants. Was your strongest claim withholding or capped? I'm a little confused about which one you're. I think the strongest claim was withholding. But we're saying that if the particular social group can be established, then the petitioner would qualify for asylum and withholding and capped. But we do believe that she qualifies for asylum. What's your strongest evidence? I think you're relying on the Enriquez and Barajas sort of line of authority. What's the strongest evidence that the gang knew she had reported? Because this case isn't one where she testified against the gang. I'm sorry. Go ahead. The strongest evidence we have in the case is the murder that actually took place on her property that she and her children witnessed, a 9-year-old and a 13-year-old. My question was different, but I didn't ask it very well. My question is, you know, we have case law where someone has testified against a gang member. That's one thing. That's a PSG. We have case law that describes that they, for purposes of social distinction, that it is critical if the persecutor knows, recognizes. I'm trying to ask whether or not this record shows that there was evidence the gang knew she had reported to the police. Yes, Judge. That testimony was taken in the law report. Where is it? Where's the evidence? Maybe you could look for that. I think you wanted to reserve a little time. Maybe you could look for that while we're hearing from opposing counsel. Did I cut you off? For me, that's a question that I'd like you to address when you come back. We'll put a few minutes on the clock when you come back. Thank you. We'll hear from opposing counsel. May it please the Court. Jacqueline Hagner on behalf of the Attorney General. This Court should reject Petitioner's challenge to the agency's denial of the motion to reopen. Here, the Board did not abuse its broad discretion in determining that Petitioner's newly proffered evidence would not likely change the result of the case. And this is the sole issue before the Court, is whether or not the Board abused its discretion here in denying the motion to reopen. Now, the Board did not abuse its discretion. The Board was not irrational here. The Board specifically discussed the two items of evidence that Petitioner submitted. That's her affidavit and her cousin's death certificate. Again, the Board discussed this evidence in its decision, and the Board reasoned that this evidence did not show that her cousin's death was in any way connected to her own experiences in El Salvador. And so her argument, to put a finer point on it, her argument is that she suffered this pretty horrendous sequence of events. And I think Judge Higginson opened by saying we're not questioning if that's past persecution. So for purposes of this hypothetical, I think, and she's deemed credible, so I'd just like to move straight to it, if we could. Her argument is that she was a merchant. She's in the same community as her cousin. She's explained her case and why, after having refused the extortion demands, that someone was murdered on her front steps, and there's a threat three days later again after that, you know, an extortion threat. If you don't comply, you know what will happen. You know all of that. And then, in short order, her cousin, also a shopkeeper, also extorted by the gang, is murdered. So the question for me is, why is it rational for the Board to conclude there was no connection between those two similarly situated victims? Yes, Your Honor, I actually think you hit the crux of the issue there, which is that petitioner's claim here before the court is focused on her status as a merchant, and that the gangs extorted her, and that her cousin was also a merchant and extorted San Miguel. Hold on, hold on, the closing, I just don't want to waste your time. The closing argument before the IJ, she makes very clearly, makes the argument that she is, again, one of the few folks who had directly resisted the gang, and she makes a political opinion of an imputed political opinion argument. Could you respond to that for me, please? Yes, Your Honor, straightforward, the agency found that she did not have a political opinion, and that decision was not appealed to this court. And I'd say the case precedent is very clear that that is a mandatory and jurisdictional filing deadline. And so the agency found it was not a political opinion. I was asking a different question. I was asking how is it rational and emotional to reopen for the BIA to decide that she hasn't shown that the two were connected, counsel? I think I followed you, Your Honor. So the new evidence did not discuss whether or not her cousin had a political opinion. There's just, there was no indication, because there was no indication in this evidence the circumstances of his death. We know that he was, Josh, he resisted, he was a victim of the same type of extortion threats by gang, and he was murdered, right? I think that's her, you have to take all of that as true. Is there, do you mean that there isn't evidence in the record that he had assisted or reported? That's correct, Your Honor. There's no evidence in the record that he reported the crime to, which was an aspect of her particular social group before the agency. That was, it was that she went into gang criminal activity and reported to the police. Ms. Wagner, I guess you do start out saying the sole issue before us is this one, but it seems to me, are you saying there's no law in the Ninth Circuit that says when the new evidence relates exactly to the original reason? In other words, it's a family member who confronts the precise set of violent harm because refusal to pay MS-13 extortion. It would seem to me intrinsically we've got to go back and look at the underlying BIA. That may be right, that may be wrong, but if we do, what is the government's, describe to me exactly the rule of law distinction between, oh, not a protected social group because this is criminal and financial, as distinct from, well, if you report to the police and it's known that you report, and then MS-13 comes and starts threatening you because you reported. That's getting close to the line of authority. I thought the Ninth Circuit had clearly demarcated that could be anti-corruption political opinion. And I'm thinking of the Enriquez-Rivas decision, that line of authority where people are willing to testify. What's the bright line rule? How much further would someone have to have gone to have gotten protection? Yes, Your Honor, I'm very familiar with Enriquez-Rivas case precedent there, and I think that's where the court can stop because there's no evidence, the new evidence does not show that her cousin witnessed any criminal activity and reported to the police. And for that reason, as the agency used that terminology, it's not connected. Okay, but counsel, I asked you to assume that I think that, just for the sake of argument, that her underlying BIA ruling is so intrinsically tied with her motion to reopen that I'm asking you to defend the underlying BIA where she did report and it came and threatened her because she reported. That, to me, seems to fall at least into the logic of Enriquez-Rivas. Yes or no? I don't believe so, sir. Your Honor, in my recollection of Enriquez-Rivas, there are several components to that particular social group. One of them being social visibility. And in that case, the extent of the public is aware. But the MS-13 clearly was totally aware. That's why they come to her house after she reports. No, sir, it's not. Your Honor, it is not the scope of the persecutor. It is the society in question. But going both ways on that, right? There's CASA going both ways on that. I would agree, Your Honor, that the case law is not particularly clear on the social distinction required for a particular social group. My response to the position here is that this question is not relevant to the motion to reopen, which is before this Court. But I understand that Your Honor would like to discuss that further. My response to the position here is that she did not establish an unrecognizable PSG in that sense. I'm not sure I'm on the line following you. Could you just take your time and back up? Absolutely, Your Honor. So I do want to begin by discussing the cognizability of petitioners to a particular social group as opposed to the agency. It's not before this Court. But it's before this Court. You've said that several times, and we've asked you to assume that it is. I've just never quite understood the line between, is it that you have to be in open court and testify? Is that how the OIL interprets that line of authority? Or could it be someone who openly is reporting to police, and they're saying, we can't protect you for at least a year? Yes, Your Honor. So I do think that reporting in court, and this Court has openly testified in court, this Court has held, certainly does satisfy that social distinction requirement. We definitely don't have that in this case. So I don't think it's necessary to go down that line. I think your questions were along the lines of, how public does it have to be? Am I correct there, Your Honor? Am I understanding your question? Well, the persecutors certainly, and this is a rare case where she says she's pushed back to the persecutors directly, and then they come, you know, they murder somebody on her doorstep, basically, and then threaten her again, you know, very directly. And hence the questions about, well, you know, the police respond, but, of course, there's unable and unwilling. There's not a showing of unwillingness here. There's a question about unable, right, because, and that's part of the problem with this cousin as well. That's why I asked, you know, is there any indication he reported? Because the police responded here, and the record is that we have to take as true as they said. This could take up to a year. She testified in response to a question about whether the police offered her protection, and she said no. So the question I'm left with, was she to, you know, expect to wait for a year? You know, there's two derivative applicants here who were children at the time, and nobody's talked about the standard for children involved. So, for me, this is actually a very close case. And, as I said, there are a couple big illegal errors in the underlying opinion. So when I look at the motion to reopen, and you are absolutely right to be calling our attention to the fact that that's where we, that's what's in front of us. It's just the motion to reopen. But on my scorecard, it wouldn't take very much. And what seems to me to be puzzling is the notion that this very similarly situated person, much of it matters that he's a relative, but he happened to be shopkeeper in the same community, you know, same extortion demands, and then he winds up being murdered. Very compelling evidence, you know, of the murder, the death certificate, photographs, whatnot of the murder. So, hence, it seems to me to be a curious position to take that this new evidence of the murder under such similar circumstances. I think the BIA said that it wasn't, no indication that it was related. Well, and if I may add in that sense, Your Honor, I know there's no indication here that, for example, that these are the same gang members, or that the gang members that murdered her, her cousin, knew about the gang members who, involved in the petitioner's experience. And that's where the agency's decision is not arbitrary or rational or contradictable. Because, okay, so the answer to Judgy Benson's first question, right, I think, from the government is that there's no indication that it's the same gang members. Same gang? I believe they both claim MS-13, Your Honor, so to the extent that they all follow that, it's a very, that's a very large gang. But we don't know if they're the same gang members. Okay. I appreciate your patience with all our many questions, but I think we're taking too much time. So, Judge Bowman. Yeah, I have a couple questions. Is it correct that the two PSGs that were presented in the original petitions of the BIA was anti-gang political affiliation and salvage-oriented witnesses to criminal activity of MS-13 gangs who report criminal activity to the police? Your Honor, there was only one PSG to the agency originally, and that was so an individual has witnessed gang criminal activity and reported it, and then she claimed a political opinion. That was anti-gang. Does that make sense? Yes, it does. And then today she says merchants. Was that ever presented below? No, Your Honor. Okay. That is a respondent's position before this court. Okay. And then, so your position is that the death of the uncle doesn't prove that he was a witness that reported it to the police? Precisely. So that it doesn't fit that particular social group? Your Honor, precisely. Thank you. Of course. Did the BIA address in any way her contention that MS-13 controls El Salvador entirely, hence there's no place she can safely relocate? I don't believe so, Your Honor. I believe that the agency made a finding that she did not meet her burden to show she's unable to relocate. Well, under Ninth Circuit case law she doesn't have that burden. Yes, Your Honor. But the agency did make the finding that she did not, that there's no showing that she's unable to relocate. And in that sense, her evidence doesn't necessarily contradict that finding because both instances took place in San Miguel. And then the only other question was a legal one. You may know that the Supreme Court granted cert in an OIL case, Santos-Zacharia, this month, as to whether and what claims must be exhausted through motions to reopen. If you're familiar with that cert grant, is that implicated here at all? Unfortunately, Your Honor, I'm honestly not familiar with that cert grant. I'm sorry, I can't offer you any insight. Anything else? Well, you certainly don't owe us an apology. You've been very stalwart in sending off our many, many questions. It's an important case.  Thank you, Judge. I think the Court has asked the opposite side of the questions that I wanted to address. But what we are seeking for the motion to be remanded for a new PSG to be articulated, based upon the new evidence, of course, then as it pertains to the case. Are you suggesting a remand to articulate a new PSG? Well, based upon the new evidence that we have and the fact that a merchant or a business owner was murdered because of lack of paying gang fees, then we could articulate another. Is there any authority to remand for a new PSG on appeal of a motion to reopen? The first PSG would have to be exhausted. In other words, I think what we're getting at. I understand that. And I didn't pursue that particular issue. But if we have new evidence, of course, we'd be making a new determination on the facts that we already have. And, of course, it would be — Are you conceding then that the evidence presented about the death of the uncle doesn't fit the particular social group that you did present below, which is witnesses to criminal activity that reported the crime to the police? I think who would have to enhance that issue is my thinking. I wouldn't say — What do you mean enhance that issue? Like expand the PSG? Yes. I see. Yeah. I guess that's the question. I don't think we can do that here. But that's why we need the case to be remanded to the board to be able to deal with this case fairly, in light of the fact that we had egregious harm, not physically, but psychologically, emotionally, and economically. Could I get your take? We're just about out of time here. But the BIA, on the motion to reopen, said there is not an indication that the cousin's death is related to the original claim of harm that she alleged. What is your best argument that they are related? Well, to me, it's specifically related in that this is a business owner who failed to pay his fees and was murdered, as another message to the respondent or other business owners in that country. Is there evidence in the record that the cousin reported to police? No. I did look for that. No, there is not evidence in the record. I think the respondent's position is, here it is. I am a business owner. She closed down her business that was outside of her home, moved it to her home, so she would not have to pay again fees. So thinking that she would be safe, they came to her house, shot at her house, and murdered a customer on her property before her children, minor children as well. So I think the murder of the cousin is related to this case, not by relationship, but, of course, of how they were similarly situated as business owners in that country. MS-13 is a nationwide gang. They basically operate the country like a government. We have a country condition report, and you're significantly over time. Let me just check with my colleagues. I think there are no other questions. We want to thank you both for your preparation and presentation. It was very helpful, both of you. Thank you so much. We'll take that matter under advisement. Thank you.
judges: Higginson, CHRISTEN, BUMATAY